# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| MONICA SANFORD, | NO. CV 09-2860 AGR |
| Plaintiff, | |
| v. | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | |

Monica Y. Sanford filed this action on May 1, 2009. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before Magistrate Judge Rosenberg on May 13 and May 14, 2009. On November 30, 2009, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The Court has taken the matter under submission without oral argument.

Having reviewed the entire file, the Court affirms the decision of the Commissioner.

///

///

///

///

# I.

## PROCEDURAL BACKGROUND

On April 7, 2006, Sanford filed applications for supplemental security income and disability insurance benefits alleging an onset date of December 15, 2004. Administrative Record ("AR") 10. The applications were denied initially and upon reconsideration. AR 30-33. An Administrative Law Judge ("ALJ") conducted a hearing on April 7, 2008, at which Sanford testified. AR 18-29. On May 19, 2008, the ALJ issued a decision denying benefits. AR 7-17. On March 12, 2009, the Appeals Council denied Sanford's request for review. AR 1-3. This action followed.

# II.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada,* 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the Court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

# III.
# DISCUSSION

## A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

## B. The ALJ's Findings

The ALJ found Sanford meets the insured status requirements through December 31, 2010. AR 12. Sanford has "severe impairments in the cardiovascular system, musculoskeletal system, and endocrine system, and from obesity." *Id.* She "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments." AR 12-13. She "has the residual functional capacity to perform the full range of medium work." AR 13. Sanford remains "capable of performing past relevant work as an inventory clerk and foster care provider." AR 17.

## C. Sanford's Credibility

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). The ALJ found that Sanford's "medically determinable impairments could reasonably be expected to produce the alleged symptoms." AR 13.

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (citations omitted). "In making a credibility determination, the ALJ 'must specifically identify what testimony is credible and what testimony undermines the claimant's complaints.'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted).

The ALJ made no finding of malingering. He found that Sanford's "statements concerning the intensity, persistence and limiting effects of [her] symptoms . . . are not credible to the extent they are inconsistent with the residual functional capacity assessment." AR 13. "[T]o discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide specific, cogent reasons for the disbelief." *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (citation and quotation marks omitted). "The ALJ must cite the reasons why the claimant's testimony is unpersuasive." *Id.* (citation quotation marks omitted). In weighing credibility, the ALJ may consider factors including: the nature, location, onset, duration, frequency, radiation, and intensity of any pain; precipitating and aggravating factors (e.g., movement, activity, environmental conditions); type, dosage, effectiveness, and adverse side effects of any pain medication; treatment, other than medication, for relief of pain; functional restrictions; the claimant's daily activities; and "ordinary techniques of credibility evaluation." *Bunnell*, 947 F.2d at 346 (citing Social Security Ruling ("SSR") 88-13[1]) (quotation marks omitted). The ALJ may consider (a) inconsistencies or discrepancies in a claimant's statements; (b) inconsistencies between a

---

[1] "Social Security Rulings do not have the force of law. Nevertheless, they constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

4

claimant's statements and activities; (c) exaggerated complaints; and (d) an unexplained failure to seek treatment. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

"If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Id.* at 959 (citing *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999)).

The ALJ discounted Sanford's credibility for three reasons, all of which were supported by substantial evidence: (1) "there is no objective evidence that would warrant a more restrictive residual functional capacity"; (2) her subjective complaints are "marked by considerable hyperbole"; and (3) her conditions were treated conservatively. AR 15-16.

### 1. Objective Evidence

Although lack of objective medical evidence supporting the degree of limitation "cannot form the sole basis for discounting pain testimony," it is a factor that an ALJ may consider in assessing credibility. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). Here, the ALJ reviewed the record and afforded "significant weight to the opinions of the consultative examiner and State Agency review physicians as their assertions are consistent with the overall medical evidence." AR 16. These physicians believed Sanford "was able to perform a full range of medium work." AR 15-16, 246-51, 254-58. The ALJ correctly noted that "there are no contrary opinions from any treating source" as to Sanford's functional limitations. AR 16; *e.g.*, AR 157, 172, 224, 227, 229. Although Sanford alleged fatigue with walking, the ALJ noted she completed a regular Bruce protocol stress test for 6 minutes, 21 seconds with no complaints. AR 16, 240-41. Her gait is normal, and she has no loss of motor strength in any extremity. AR 16, 250. There is no objective evidence of her alleged vision problems. AR 16, 279 (visual acuity of 20/20 in each eye; "diabetes mellitus without ocular manifestations"). The ALJ's finding is supported by substantial

5

evidence in the medical records.

### 2. Exaggeration

The ALJ also wrote that Sanford's subjective complaints are "marked by considerable hyperbole." AR 16. He found incredible "her assertions that she has pain 'all over her body' and does nothing whatsoever productive, and in fact, spends most of the day lying down." *Id.*; *see* AR 21-22, 25-26. The ALJ noted that Sanford "drives and has a valid California driver's license," "was able to complete a regular . . . stress test with exercising for 6 minutes, 21 seconds with no complaints," and "has been self-employed as a foster parent for her two grandchildren" since 1995. AR 16; *see* AR 24-25, 114, 118, 240, 246. The ALJ also noted that Sanford's allegation of pain all over her body was inconsistent with her complaint to the examining physician of only back pain which improves with change of position and medication. AR 15, 246-47. There is substantial evidence supporting the ALJ's finding.

### 3. Conservative Treatment

The ALJ found that Sanford's conditions have been treated conservatively with medication. AR 15. Sanford argues she has periodically complained of pain to her physicians. JS at 3-4 (citing physician visits on 9/29/05, 1/06, 4/20/06, 8/07, 10/07). On those occasions, the physicians treated her pain with medication or nothing at all. AR 169, 173-75, 179, 300, 302, 305. Sanford points out that, on one occasion in August 2007, the medical record states "no relief with NSAID." JS at 4 (citing AR 302). On the other hand, Sanford reportedly told the examining physician that her pain improves with medication and change of position. AR 247. It is the ALJ's province to resolve conflicting evidence.

The ALJ provided "specific, clear and convincing reasons" for declining to fully credit Sanford's testimony, *see Lingenfelter*, 405 F.3d at 1036, and his credibility finding is supported by substantial evidence. The Court "may not engage in second-guessing." *Thomas*, 278 F.3d at 959.

## D. Relevant Past Work

Sanford argues that the ALJ improperly determined she could perform past relevant work "without providing an appropriate discussion regarding the physical and mental demands of [her] past jobs." JS at 8.

The ALJ found that Sanford could perform her past relevant work as inventory clerk and foster care provider. The ALJ explained that his determination "is consistent with the findings of the vocational analyst at Exhibit 11E, and the claimant's description of her work activities at Exhibit 6E. In comparing the claimant's residual functional capacity with the physical and mental demands of this work, I find that the claimant is able to perform it as actually and generally performed." AR 17.

Sanford's descriptions of her prior work (*see* AR 114-21 (Exhibit 6E)), and the vocational analyst's opinion, which in turn relied on specific job classifications in the Dictionary of Occupational Titles (*see* AR 142-44 (Exhibit 11E)), constitute substantial evidence supporting the ALJ's step four determination. *See Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) (claimant's testimony about past relevant work is "highly probative"); *Pinto v. Massanari*, 249 F.3d 840, 845-46 (9th Cir. 2001) ("the best source for how a job is generally performed is usually the Dictionary of Occupational Titles"). Sanford does not identify any inconsistency between the ALJ's residual functional capacity assessment and her ability to perform her past relevant work as actually performed according to her description or as generally performed according to the DOT job classifications. To the extent Sanford argues the ALJ should have summarized the exhibits in his opinion rather than incorporate the exhibits by reference, any error is harmless.

## E. Medical Equivalency to Listed Impairment

Sanford argues the ALJ erred in determining that her condition does not equal a listed impairment. JS at 11-14. At step three, the claimant bears the burden of demonstrating that her impairments are equivalent to one of the listed

impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. *Bowen v. Yuckert*, 482 U.S. 137, 141, 146 n.5, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). "If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step." *Id.* at 141; *see also Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. §§ 404.1520(4)(iii), 416.920(4)(iii).

"The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Sullivan v. Zebley*, 493 U.S. 521, 532, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990) (citation omitted). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* at 530 (emphasis in original). "To *equal* a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment, or, if a claimant's impairment is *not* listed, then to the listed impairment 'most like' the claimant's impairment." *Tackett*, 180 F.3d at 1099 (quoting 20 C.F.R. § 404.1526, emphasis in original). "'Medical equivalence must be based on medical findings.' A generalized assertion of functional problems is not enough to establish disability at step three." *Id.* at 1100 (quoting 20 C.F.R. § 404.1526).

Sanford argues the ALJ's factual findings were inadequate to support the conclusion that her impairments did not equal a listing. (JS 11-13.) The ALJ found that Sanford "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments." AR 13. The ALJ reviewed the medical evidence, and cited the opinions of the consultative examiner and state agency physicians. AR 13-17. He also explained that he considered Sanford's obesity alone and in combination with her other

impairments in determining that she did not meet or equal the requirements of a listing. AR 13.

In rejecting a similar argument that an ALJ erred by failing to discuss why a claimant did not satisfy a listed impairment, the Ninth Circuit held that "[i]t is unnecessary to require the Secretary, as a matter of law, to state why a claimant failed to satisfy every different section of the listing of impairments." *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990). The court found that the ALJ's summary of the medical evidence and the claimant's testimony was sufficient, even though the ALJ did not state what evidence supported the conclusion that the impairments did not meet or equal a listing. *Id.* at 1200-01. "To require the ALJ's to improve their literary skills in this instance would unduly burden the social security disability process." *Id.* at 1201; *see also Lewis v. Apfel*, 236 F.3d 503, 513 (9th Cir. 2001) (ALJ need not discuss and evaluate evidence that supports his or her conclusion under a specific heading). In addition, Sanford does not present any evidence that she argued to the ALJ that her impairments met Listing 1.04A. *Burch*, 400 F.3d at 683 ("An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence."). The ALJ did not err.

Moreover, Sanford argues only that she "may" equal Listing 1.04A. JS at 13. Listing 1.04A requires a spine disorder resulting in compromise of a nerve root or spinal cord accompanied by (1) evidence of nerve root compression characterized by neuro-anatomic distribution of pain; (2) limitation of motion of the spine; (3) motor loss (atrophy with associated muscle weakness or muscle weakness) with sensory or reflex loss; and (4) if there is involvement of the lower back, positive straight-leg raising test (sitting and supine). 20 C.F.R. Pt. 404, Subpt. P, App. 1., § 1.04A. At a minimum, Sanford points to no evidence of motor loss with sensory or reflex loss, and the record does not reveal any

"symptoms, signs and laboratory findings 'at least equal in severity and duration'" to this requirement of the listing.  AR 14-15, 218 (full range of motion), 221 (no motor deficit, no sensory deficit; reflexes normal), 229 (neurologic examination is normal, no sensory loss), 250 (no motor loss, sensory grossly intact and equal bilaterally); *see Tackett*, 180 F.3d at 1099 (quoting 20 C.F.R. § 404.1525).

## IV.
## ORDER

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: July 12, 2010

*Alicia G. Rosenberg*
ALICIA G. ROSENBERG
United States Magistrate Judge